IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SALVATORE BERARDI<br>*Plaintiff* | : | CIVIL ACTION |
| | : | |
| | : | NO. 13-7488 |
| v. | : | |
| | : | |
| DREXEL UNIVERSITY<br>*Defendant* | : | |
| | : | |

MEMORANDUM OPINION

NITZA I. QUIÑONES ALEJANDRO, J.                                      MAY 27, 2014

INTRODUCTION

Before this Court is the *motion to dismiss* filed by Defendant Drexel University ("Defendant" or "Drexel") pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking to dismiss the amended complaint for (1) failure to state a claim upon which relief can be granted; (2) failure to substantiate a breach of contract claim and/or establish mutual mistake; and (3) as barred, by the Confidential Separation Agreement and General Release executed by the parties. [ECF 7]. Plaintiff, Salvatore Berardi, opposed the motion [ECF 8], and a reply followed. [ECF 9]. The motion to dismiss is ripe for disposition.

For the reasons stated herein, Defendant's motion is granted.

BACKGROUND

Plaintiff commenced this action by writ of summons in state court on August 9, 2013, and filed a complaint on November 22, 2013.[1] The matter was removed to federal court on December 20, 2013. Thereafter, Plaintiff filed an amended complaint asserting claims for breach

---
[1] *See* Plaintiff's state court filings. [ECF 1].

of contract, violation of the Employee Retirement Income Security Act ("ERISA"), and mutual mistake, all arising from the *Confidential Separation Agreement and General Release* (jointly, "Separation Agreement")[2] executed by Plaintiff and Defendant.

For the purpose of ruling on Defendant's motion to dismiss, this Court accepts as true the following summary of the relevant factual allegations in the amended complaint:[3]

> Plaintiff was employed by Defendant from October 2006 until July 11, 2011 (Am. Compl., ¶3), when he was notified that his position as Project Task Coordinator would be eliminated. (*Id.* at ¶6). Previously, on September 15, 2010, Plaintiff suffered a work-related injury. (*Id.* at ¶5).
>
> On August 12, 2011, Plaintiff and Defendant executed the Separation Agreement which terminated the employment relationship between them and documented the release, restriction, and reservation of certain rights of the parties. (Am. Compl., ¶¶7, 10). Briefly, the Separation Agreement provides that Drexel agreed to pay Plaintiff $19,261.00 and provide tuition remission to Plaintiff's son through June 15, 2012, and, in exchange, Plaintiff agreed to release "any and all Claims" he then had or may have in the future, "arising out of or relating to any conduct, matter, event or omission existing or occurring before" Plaintiff signed the Separation Agreement. The General Release expressly included, as among the released claims, "any claims under the Employee Retirement Income Security Act ("ERISA")". (Separation Agreement, ¶5(b)(vi)). The parties agreed, however, that Plaintiff's release excluded "any open Worker's Compensation claims, short-term and/or long-term disability claims . . . ." (*Id.* at ¶5(a); Am. Compl., ¶9).
>
> Almost eight months later, on April 10, 2012, Plaintiff filed a claim for long-term disability with The Hartford, Drexel's third-party administrator. (Am. Compl. at ¶12). On July 17, 2012, Plaintiff's application was approved, noting that he was found disabled as of September 16, 2010. (*Id.* at ¶13).
>
> On August 4, 2012, the Social Security Administration rendered a decision finding Plaintiff totally and permanently disabled from any form of gainful employment. (*Id.* at ¶14).

---

[2] *See* ECF 4-1.
[3] *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

**LEGAL STANDARD**

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

In the motion to dismiss, Defendant contends that Plaintiff's ERISA claim should be dismissed because it is barred by the clear and express language regarding the release of such claims, contained in the Separation Agreement. Defendant also argues that Plaintiff has failed to

satisfy the pleading standards for his breach of contract and mutual mistake claims and, therefore, the amended complaint should be dismissed in its entirety. Plaintiff disagrees and argues that his current claims, including his ERISA claim, fall within the negotiated reservation of his right to pursue a claim for Worker's Compensation, short-term disability, and long-term disability benefits. For the reasons stated below, this Court finds that Plaintiff's ERISA claim falls within the scope of the General Release and is, therefore, barred as a matter of law.

It is well-settled that "contract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement." *In re Old Summit Mfg., LLC*, 523 F.3d 134, 137 (3d Cir. 2008) (quoting *Dep't of Transp. v. Pa. Indus. for the Blind & Handicapped*, 886 A.2d 706, 711 (Pa. Cmwlth. 2005)). When interpreting contracts, Pennsylvania courts apply the "plain meaning rule" which assumes that the intent of the parties is embodied in the writing itself, and, when the words are clear and unambiguous, the parties' intent is to be determined only from the express language of the agreement. *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994). In ascertaining the intent of the parties, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter. *California Sun Tanning USA, Inc. v. Elec. Beach*, Inc., 369 F. App'x 340, 346 (3d Cir. Pa. 2010) (citing *Espenshade v. Espenshade*, 729 A.2d 1239, 1243 (Pa. Super. 1999)).

As stipulated in the Separation Agreement, "the parties desire amicably and fully and finally to settle all matters between [them], including the amicable termination of [Plaintiff's] employment with Drexel University."[4] Plaintiff was given the choice to sign or not sign the Separation Agreement and, depending on his choice, certain rights would attach. By signing the Separation Agreement, Plaintiff agreed to be bound by its provisions, and to release any and all

---
[4] Separation Agreement at 1. [ECF 4-1].

claims he had against Drexel (subject to an express, limited exclusion) arising out of conduct, events and/or occurrences that happened before the parties' execution of said agreement, in exchange for Drexel's lump sum monetary payment and the remission of tuition.[5] Specifically, the Separation Agreement includes the following "General Release" language:

> (a) In exchange for Drexel University's payments and benefits described in paragraph 2, you [Plaintiff] release and forever discharge, to the maximum extent permitted by law, Drexel University and each of the other "Releasees" as defined below, from any and all claims, causes of action, complaints, lawsuits or liabilities of any kind (collectively "Claims," *excluding any open Worker's Compensation claims, short-term and/or long-term disability claims*) as described below which you … have or may have against Drexel University … [6]
>
> (b) By agreeing to this General Release, you are waiving, to the maximum extent permitted by law, any and all Claims which you have or may have against Drexel University or any of the other Releasees arising out of or relating to any conduct, matter, event or omission existing or occurring before you sign this Agreement, including but not limited to the following:
>
> (i) Any Claims having anything to do with your employment with Drexel University …
> (ii) Any Claims having anything to do with your separation from Drexel University …
> (iii) Any Claims for unpaid or withheld wages … benefits … disability pay, pay differential, pay continuation and/or other benefits or compensation of any kind …
>
>        \* \* \*
>
> (vi) any Claims under the Employee Retirement Income Security Act ("ERISA").[7, 8]

Paragraph ¶5(d) of the Separation Agreement further provides that the General Release "includes all Claims known or unknown by you [Plaintiff], those that you may have already

---

[5] *See* Separation Agreement, ¶¶2 and 5. [ECF 4-1].
[6] *Id.* at ¶5(a) (emphasis added).
[7] *Id.* at ¶¶5(b)(i), (ii), (iii), and (vi).
[8] A claim for benefits under ERISA is an assertion of a contractual right under the terms of the plan, *Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 381 (3d Cir. 2003), which is to be interpreted under principles of contract law. *Kemmerer v. ICI Ams., Inc.*, 70 F.3d 281, 288 (3d Cir. 1995).

asserted or raised as well as those that you have never asserted or raised." Paragraph 6, however, provides that "[t]he General Release in Paragraph 5 above does not apply to:

(a) Any claims for vested retirement benefits;
(b) Any claims to require Drexel University to honor its commitments set forth in this Agreement;
(c) Any claims to interpret or to determine the scope, meaning or effect of this Agreement;
(d) Any claims relating to any conduct, matter, event or omission occurring after you received the payments and benefits set forth in Paragraph 2."[9]

Plaintiff argues that his ERISA claim is not barred by the General Release provision in the Separation Agreement because it is "inextricably linked" to his "long-term disability" claim which was expressly excluded from the General Release provisions[10] and which arose *after* he signed the Separation Agreement. In support of this argument, Plaintiff relies upon, but incorrectly interprets the otherwise, clear and unambiguous language contained in Paragraphs 5(a) and 6(d) of the Separation Agreement. As stated, pursuant to these provisions, Plaintiff released "any and all Claims . . . arising out of or relating to any conduct, matter, event or omission existing or occurring before" said agreement was signed. Plaintiff argues that his ERISA claim arose *after* he signed the Separation Agreement because it is based upon Hartford's determination of July 17, 2012, which found Plaintiff disabled. While Plaintiff is correct that Hartford's disability determination was made after the parties signed the Separation Agreement, contrary to Plaintiff's argument, both the claim and determination were based upon an event or occurrence, (*i.e.*, Plaintiff's September 15, 2010, work injury), that occurred *before* Plaintiff signed the Separation Agreement. As such, applying the above-cited principles of contract

---

[9] Separation Agreement, ¶6 (emphasis in original).
[10] While Plaintiff's argument rests on his contention that he "reserved the rights to long-term disability benefits," Plaintiff fails to recognize that such reservation was expressly limited to "any *open* Worker's Compensation claims, short-term and/or long-term disability claims . . ." (Separation Agreement, ¶5(a) (emphasis added)). Yet, the long-term disability claim on which Plaintiff relies to save his ERISA claim was not "open" at the time he signed the Separation Agreement, as it was not filed until April 10, 2012.

6

interpretation, this Court finds that the General Release language in the Separation Agreement is clear and unambiguous and, therefore, bars Plaintiff's ERISA claim.

*Mutual Mistake*

Plaintiff attempts to overcome the application of the General Release by asserting a claim of mutual mistake. Specifically, Plaintiff contends that it was his intent to receive *all* benefits due to him as an employee, while it was Defendant's intent to terminate his employment. Thus, according to Plaintiff, had both parties known the effective date of his disability, neither party would have executed the Separation Agreement. Defendant rebuts this argument and argues that the clear language of the Separation Agreement and the General Release clearly demonstrates that the parties each intended to terminate their employment relationship on the terms set forth in the Separation Agreement, yet reserve Plaintiff's right to file for long- or short-term disability benefits. This termination of employment contemplated Plaintiff's release of claims known and unknown to him in exchange for certain consideration by Defendant and, therefore, Defendant contends that the argument of mutual mistake is inapplicable.

Under Pennsylvania law, mutual mistake is a valid ground for rescinding or reforming a settlement agreement. *Consolidated Rail Corp. v. Portlight, Inc.*, 188 F.3d 93, 96 (3d Cir. 1999) (citing *Lanci v. Metropolitan Ins. Co.*, 564 A.2d 972, 974 (Pa. Super. 1989)). "Mutual mistake exists where both parties to a contract are mistaken as to existing facts at the time of execution of the contract." *Id.* (quoting *Holt v. Dep't of Public Welfare*, 678 A.2d 421, 423 (Pa. Cmwlth. Ct. 1996)). If a mistake is unilateral and is not due to the fault of the party not mistaken but rather to the negligence of the party who acted under the mistake, the unilateral mistake affords no basis for rescinding or reforming the release. *CNA Insurance Group v. Nationwide Mutual Insurance*

*Co.*, 2000 WL 288241, *9 (E.D. Pa. March 8, 2000); *Smith v. Thomas Jefferson University Hosp.*, 621 A.2d 1030, 1033 (Pa. Super. 1993).

The doctrine of mutual mistake will only apply "where the mistake: (i) relates to the basis of the bargain; (ii) materially affects the parties' performance and; (iii) is not one as to which the injured party bears the risk." *Consolidated Rail*, 188 F.3d at 96 (citations omitted). The burden of proving a "mutual mistake" rests with the moving party and requires evidence that is clear, precise, and convincing. *CNA Ins. Group v. Nationwide Mut. Ins. Co.*, 2000 WL 288241, at *9 (E.D. Pa. Mar. 7, 2000) (citing *Gocek v. Gocek*, 612 A.2d 1004, 1006 (Pa. Super. 1992)); *see also Bugen v. New York Life Ins. Co.*, 184 A.2d 499, 500 (Pa. 1962).

Here, Plaintiff has failed to allege clear, precise, and convincing facts which are sufficient to demonstrate that both he and Drexel entered into the Separation Agreement based upon some mutual mistake. At best, Plaintiff asserts facts to establish his own mistaken interpretation of the Separation Agreement, but such unilateral mistake is an insufficient basis to rescind or reform the Separation Agreement. Despite Plaintiff's fine line distinction of the parties' respective intentions behind executing the Separation Agreement, the undisputed purpose, as gleaned from the plain language of the Separation Agreement itself, was to terminate their employment relationship. At the time of its execution, Plaintiff was represented by counsel. The Separation Agreement clearly provides Plaintiff's acknowledgement that he was releasing "all claims known or unknown by [him] at the time of execution." *See* Separation Agreement, ¶5(d). Aside from arguing that the "disabled" finding was made after the execution of the Separation Agreement, Plaintiff fails to sufficiently allege, as required, facts to establish how this disability finding relates to the basis of the agreement; materially affects the parties' performance under the agreement and; is not one as to which Plaintiff bears the risk. *Consolidated Rail Corp.*, 188 F.3d

at 96. Under the circumstances and facts pled, the record does not support Plaintiff's mutual mistake defense. This Court, therefore, finds Plaintiff's mutual mistake argument without merit.

*State Law Claim*

At Count I of the amended complaint, Plaintiff asserts a state law claim based upon Defendant's alleged breach of contract. Since Plaintiff's federal claim providing the court's original jurisdiction is herein dismissed, pursuant to 28 U.S.C. §1367(c)(3), this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. *See also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999); *Eberts v. Wert*, 1993 WL 304111, at *5 (E.D. Pa. Aug. 9, 1993) ("Courts should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed."). Accordingly, the breach of contract claim will not be addressed.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is granted. An order consistent with this memorandum opinion follows.

*Nitza I. Quiñones Alejandro, U.S.D.J.*